320

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID
CHARLES McCRAY, Defendant-Appellant.

(No. 71-183; )

Second District—September 12, 1972.

Opinion by Mr. JUSTICE ABRAHAMSON.

William R. Beu, Public Defender, of Rockford, (Frank P. Vella, Jr.,
Assistant Public Defender, of counsel,) for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (Robert R. Mc-
Williams, Assistant State's Attorney, of counsel,) for the People.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT E.
LEE, Defendant-Appellant.

(No. 71-289; )

Second District—September 1, 1972.

*Rehearing denied September 26, 1972.*

Carbary, Carbary & Chapski, of Elgin, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Ralph J. Gust, Jr., Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was convicted by a jury of the crime of murder and on March 26, 1971, was sentenced to 25-50 years in the Illinois State penitentiary.

On October 24, 1970, the defendant while driving to the Club Friday tavern picked up a hitchhiker by the name of Gerald Zapp. They stopped at the tavern and Zapp called a woman living in Lombard and made arrangements for Zapp and the defendant to go to her home. While at the tavern the defendant went outside with a beer in his hand. The bartender came out and engaged in an argument with the defendant. The defendant pulled out a gun from his pocket in the presence of the bartender and then put it in another pocket. Zapp and the defendant then drove to Lombard to the residence of one Wini Cairns. Apparently, at the request of Zapp, Mrs. Cairns had called Lorraine Decker who had come over to her house. They spent some time there in which they had drinks and were fed by Mrs. Cairns. During the course of the evening a Jim Shram came to the house and stayed 5-10 minutes when he was asked to leave. During this time the testimony is that he made a derogatory remark as to the defendant's clothing. During the evening Mr. and Mrs. Witkowski came to the premises. Later, Mrs. Cairns suggested it was time for the defendant and the decedent to leave. The defendant left

first and the decedent followed him a few moments later. Both Mrs. Cairns and Mrs. Decker went to the window to see if they had driven away. Mrs. Cairns testified that after they had left she turned off the kitchen lights and peeked out of the window to see if the two men had left. A few minutes later as she was watching she saw and heard sounds and flashes which she thought were firecrackers. Mrs. Decker also heard the shots being fired and she then looked out the window with Mrs. Cairns. Both women noted the car parked in the driveway with the lights of the car not lighted. Both women then saw its lights come on and the car back out of the driveway. A few minutes later the decedent was found on the lawn having been shot three times. The defendant was stopped by a police officer on his way home, was released, drove to his home in Woodstock and went to bed. He was arrested the next day and subsequently charged with murder.

The defendant testified in his own behalf and stated in substance that he had an altercation with Zapp at the Cairns residence. Conflicting evidence is found in the record as to arguments between Zapp and the defendant. Defendant then testified that Zapp came out, struck him, knocked him to the seat of the car, and that he was able to push Zapp out of the car. He further testified that his lights were on and his engine running at this time. According to the defendant, Zapp then started back at him and he shot into the ground. When Zapp was ten feet away he shot twice. When he was eight and one-half feet away he shot again and Zapp fell.

The defendant has raised three grounds for reversal, first, that the evidence was not sufficient to prove the defendant guilty beyond a reasonable doubt, second, that the instruction of the court deprived the defendant of a fair trial, and lastly, that the sentence was excessive.

Turning first to the question of reasonable doubt the defendant contends that the evidence was not sufficient to convict him of murder, and that at the most he was guilty of voluntary manslaughter.

The defendant relies upon alleged bruises found upon his person at the time of his arrest as evidence that he had fought with the decedent. Three police officers the next day did not notice any bruise marks or contusions on the defendant. Approximately a week later the defendant was examined in the jail by a doctor who found the defendant had a swollen upper lip. The doctor further testified that this injury could have been self inflicted. The doctor did testify that this swelling could have been caused by a blow struck a week before. However, photographs of the defendant taken at the time of his apprehension failed to disclose any such swelling.

■■ The defendant contends that the "crucial part of the State's case

is based on circumstantial evidence." With this contention this court does not agree. Two witnesses testified that they observed defendant's car with the lights off and heard the shots. Defendant, on the other hand, asserts that the decedent attacked him, that the lights to the car were on, the engine running, and that he then fired at the decedent after he had ejected him from the car. This is a question of fact for the determination by the jury as to whether or not they chose to believe the defendant's testimony or the testimony of the two women. This court has repeatedly said that it will not substitute its judgment for that of the jury on questions of fact such as this.

Another aspect to be considered in this regard are the actions of the defendant following the commission of the crime. The defendant fled the scene and failed to render any aid to the victim who was lying in the yard of the premises where they had both spent the evening. Secondly, the defendant was stopped by a police officer for an automobile equipment violation and failed to make any mention of the offense to the police officer. The defendant further testified that after the shooting, he drove away and threw the shells and the gun out of the window of the car. Additionally, the defendant testified that at the time of the purported attack he screamed. Neither Mrs. Cairns nor Mrs. Decker heard any screaming but did hear the gun shots.

The defendant relies upon *People v. Jordan* (1954), 4 Ill.2d 155, 122 N.E.2d 209, in contending that the jury should have believed the defendant's version of the shooting. *Jordan* can be readily distinguished from the instant case in that the defendant therein contended that he fought with the decedent, that the decedent fell and subsequently died of his injury. Jordan then hailed a passing motorist after he noted the decedent had been seriously hurt and asked them to get help. The police came and he remained at the scene until they arrived. That is hardly the situation in the instant case.

■■ Considering all of the evidence, both direct and circumstantial, the jury was well justified in finding that the defendant was guilty of the crime of murder beyond a reasonable doubt. *People v. Burris* (1971), 49 Ill.2d 98, 273 N.E.2d 605.

The second contention of the defendant is that the court erred in giving an instruction on voluntary manslaughter on the court's own motion. Defendant contends he was relying upon self defense as a defense and that the giving of an instruction by the court on voluntary manslaughter misled the jury as to his theory of defense. In this regard it is interesting to note that at the time of the post-trial motion, defendant's counsel stated that defendant should have been found guilty of voluntary manslaughter, and asked the court to set aside the verdict of murder and

"find the defendant guilty of manslaughter." Further, defendant's appellate counsel also contends that at best the defendant was guilty of voluntary manslaughter. It is difficult to ascertain how the giving of this instruction would therefore prejudice the defendant. It is also to be noted that the court gave the following instruction tendered by the State which was not objected to by the defendant:

"The defendant is charged with the crime of murder which includes the crime of voluntary manslaughter. The defendant has pleaded not guilty."

■■ Lastly, the giving of this instruction by the court was not raised in the post-trial motion and was raised for the first time before this court. The courts of Illinois has held in such a circumstance the defendant has waived this objection. Under the factual circumstances here, the defendant has more than waived it as he now contends in this appeal that in the alternative the conviction of murder should be reversed and the defendant found guilty of voluntary manslaughter only.

■■ Defendant also raises in this court for the first time, an objection to the State's instruction on circumstantial evidence. This instruction was given over the defendant's objection at the trial. As indicated above, defense counsel in his brief herein, has contended to the contrary asserting that part of the State's case was based on circumstantial evidence. There were no actual eye witnesses to the crime. Considering all the facts herein, under the circumstances such an instruction was proper.

■■■ The last contention of the defendant is that the sentence is excessive and that there was no pre-sentence investigation. Examination of the record discloses the latter is incorrect. As defense counsel stated to the court "* * * my client has just pointed out in page 2 of the report * * *" and a colloquy then ensued between defense counsel and the court as to the interpretation of a statement in the report which was being considered in mitigation. It is obvious that this was a pre-sentence report being considered by the court as defense counsel then stated "Judge, I have read the pre-sentence report in its entirety * * *." The courts of Illinois have repeatedly stated that the trial court is normally in a superior position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review. *People v. Fox* (1971), 48 Ill.2d 239, 269 N.E.2d 720 at 728.

Judgment affirmed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.